IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRENA JOHNSON, BARBARA DEMPS, <br><br> Plaintiffs, <br> v. <br><br> THE PNC FINANCIAL SERVICES GROUP, INC., <br> THE PNC FINANCIAL SERVICES GROUP, INC INCENTIVE SAVINGS PLAN ADMINISTRATIVE COMMITTEE, <br> DOES NO. 1–20, <br><br> Defendants. | 2:20-CV-01493-CCW |

**MEMORANDUM OPINION AND ORDER**

This case centers on allegations that ERISA plan fiduciaries breached their duties of prudence and loyalty by overpaying for certain administrative and recordkeeping services. In their Motion to Dismiss, ECF No. 15, Defendants The PNC Financial Services Group, Inc., ("PNC") and The PNC Financial Services Group, Inc. Incentive Savings Plan Administrative Committee ("Administrative Committee") (collectively "Defendants") argue that Plaintiffs Henrena Johnson and Barbara Demps, former employees of PNC and current participants in a retirement savings plan offered by PNC, have failed to state a claim that Defendants breached their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, (Count I) and consequently have also failed to state claims for either "failure to monitor fiduciaries and co-fiduciary breaches" (Count II) or "in the alternative, liability for participation in the breach of fiduciary duty" (Count III).

1

The Court agrees, and Defendants' Motion will be granted. However, Plaintiffs have requested leave to amend in the event of dismissal, noting that they "stand ready to add further allegations…should the Court require further amplification of Plaintiffs' claims." ECF No. 24 at 20 n.8. In light of Plaintiff's request to amend and because leave to amend should be "freely given when justice so requires," Fed. R. Civ. P. 15(a), Plaintiffs will be given leave to file an amended complaint.

## I.     Background

### A.     Procedural History

As noted above, Plaintiffs' three-count Complaint alleges claims for (1) breach of fiduciary duty (Count I); (2) failure to monitor fiduciaries and co-fiduciary breaches (Count II); and, (3) in the alternative, liability for participation in breach of fiduciary duty (Count III). After the parties stipulated to an extension of time for Defendants to respond, Defendants moved to dismiss the Complaint. Defendants' Motion has been fully briefed and is ripe for disposition.

### B.     Relevant Factual Allegations

Plaintiffs' Complaint asserts the following relevant factual allegations. Plaintiffs, former PNC employees, are participants in The PNC Financial Services, Inc. Incentive Savings Plan (the "Plan"), "a single-employer 401(k) plan." ECF No. 1 at ¶ 17. As of December 2017, the Plan had approximately 66,000 participants and assets of nearly $5.7 billion. *See id.* at ¶ 25. The Administrative Committee and its members are appointed by PNC to administer the Plan on PNC's behalf. *See id.* at ¶ 12. The Administrative Committee is the Plan administrator and is a fiduciary under ERISA. *See id.* at ¶ 12 (citing 29 U.S.C. §§ 1002, 1102). Plaintiffs also name "Does No. 1–20" as the individual members of the Administrative Committee, who "by virtue of their membership, are fiduciaries of the Plan or otherwise are fiduciaries to the Plan." *Id.* at ¶ 13.

Plaintiffs, on behalf of themselves, the Plan, and a putative class of similarly-situated Plan participants, allege that Defendants breached their fiduciary duties under ERISA. Specifically, Plaintiffs assert that Defendants caused the Plan to pay out excessive administrative and recordkeeping fees, and also "caused the Plan to compensate PNC Financial Services, at an average of over $235,000 per year from 2014 to 2018, purportedly for 'certain administrative services' performed as the Plan Administrator." *Id.* at ¶ 26. Plaintiffs assert that these allegedly excessive fees and costs demonstrate imprudence and disloyalty by Defendants. *See id.* at ¶ 23.

In support of these alleged breaches, Plaintiffs assert that Plan participants paid, on average, a per-year administrative fee which rose from about $85 to about $90 from 2014–2018. *See id.* at ¶ 27. Recordkeeping fees, paid to Alight Solutions LLC (formerly Hewitt Associates LLC), the Plan's recordkeeper, which account for the majority of the total administrative fee, in general fell from about $57 to $51 over the same period. *See id.* at ¶¶ 21, 28. According to the Complaint, with respect to recordkeeping services, Alight "is responsible for maintaining records with respect to employees' accounts in the Plan, effecting participant Plan investment elections, and performing administrative functions such as processing loan and withdrawal requests." *Id.* at ¶ 21.

Relying on data from The 401k Averages Book,[1] an industry publication, Plaintiffs assert that much smaller plans—with just 100 participants and $5 million in assets—pay, on average, only $35 per participant, per year, in recordkeeping fees. *See id.* at ¶ 25. Furthermore, Plaintiffs contend, without any supporting reference in the Complaint,[2] that "the Plan should have been able

---

[1] In a declaration submitted in conjunction with their Opposition to Defendants' Motion, Plaintiffs state that the reference to the 20th Edition in the Complaint was in error, and provide relevant excerpts from the correct 18th Edition. The difference between the two with respect to reported recordkeeping costs for 100 participant/$5 million asset plans—$35 for the 18th Edition, $40 for the 20th Edition—is not material to the Court's decision here.

[2] In their Opposition, Plaintiffs point to *Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 214 (D. Mass 2020). In *Moitoso*, the parties stipulated that "if Fidelity were a third party negotiating this fee structure at arms-length, the value of services would range from $14–$21 per person per year over the class period, and that the recordkeeping services

to negotiate a recordkeeping fee of no more than $14 to $21 per participant, based upon the amount comparable plans were paying for the same or similar services during the relevant period." *Id.* at ¶ 29. Plaintiffs assert, therefore, that Defendants failed to engage in "virtually [any] examination, comparison, or benchmarking of the recordkeeping and administrative fees of the Plan to those of other similarly sized defined contribution plans, or were complicit in paying grossly excessive fees," and, had they done so, "Defendants would have known that the Plan was compensating its service providers at levels inappropriate for its size and scale." *Id.* at ¶ 30.

Based on the above, Plaintiffs claim in Count I that Defendants are liable for breaches of their duties of prudence and loyalty. *See id.* at ¶¶ 51–55. In Count II, Plaintiffs allege that "PNC had a fiduciary responsibility to monitor the performance of the Administrative Committee and its members" and it breached this duty by failing to stop or mitigate losses to the Plan caused by the alleged imprudence and disloyalty alleged in the Complaint (and as specifically evidenced by the allegedly excessive recordkeeping fees paid by the Plan). *See id.* at ¶¶ 58–63 (citing 29 U.S.C. § 1109(a)). Furthermore, Plaintiffs also claim in Count II that each Defendant is "liable for the losses caused by the breaches of their co-fiduciaries under 29 U.S.C. § 1105(a)." *Id.* at ¶ 64.

Finally, in the alternative, Plaintiffs claim in Count III that, to the extent any Defendant is not deemed to be a fiduciary or co-fiduciary under ERISA, such Defendant should nonetheless be held liable for "the conduct at issue here, since all Defendants possessed the requisite knowledge and information to avoid the fiduciary breaches at issue here and knowingly participated in breaches of fiduciary duty by permitting the Plan to pay unreasonable administrative and recordkeeping fees." *Id.* at ¶ 67.

---

provided by Fidelity to this Plan are not more valuable than those received by other plans of over $1,000,000,000 in assets where Fidelity is the recordkeeper." *Id.*

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id*. Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id*., and be "sufficient to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.,* 809 F.3d 780, 789 (3d Cir. 2016).

**III.    Discussion**

    **A.    The Complaint Fails to State Facts from which a Breach of Fiduciary Duty Can Be Plausibly Inferred (Count I)**

Plaintiffs' Complaint asserts in Count I that Defendants breached their fiduciary duties under ERISA, specifically 29 U.S.C. § 1104(a)(1)(A), (B), and (D), by causing or allowing the Plan to pay excessive recordkeeping and administrative fees, and by "compensat[ing] PNC Financial Services, at an average of over $235,000 per year from 2014 to 2018, purportedly for 'certain administrative services' performed as the Plan Administrator." ECF No. 1 at ¶¶ 26, 30–31. Defendants argue that Plaintiffs have failed to plead facts from which it can be plausibly inferred that Defendants' stewardship of the Plan was marred by either imprudence or disloyalty. *See* ECF No. 16 at 1–2.

The elements of a breach of fiduciary duty claim under ERISA are as follows: "'(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan.'" *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (2019) (quoting *Leckey v. Stefano*, 501 F.3d 212, 225–26 (3d Cir. 2007)). PNC's Motion focuses on the second element only. *See* ECF No. 16 at 2–3. With respect to the second element, ERISA imposes duties of prudence and loyalty on plan fiduciaries. *See Peterson v. Ins. Servs. Office, Inc.,* Civil Action No. 20-13223, 2021 U.S. Dist. LEXIS 70877, at *6 (citing 29 U.S.C. § 1104(a)(1)). As such, a plan fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1), (a)(1)(A). Fiduciaries are held to the "prudent man" standard, "which requires fiduciaries to exercise 'the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'"

*Sweda*, 923 F.3d at 328 (quoting 29 U.S.C. § 1104(a)(1)(B)).  Furthermore, as relevant here, a fiduciary is also required to "administer the plan according to governing documents and instruments."  29 U.S.C. § 1104(a)(1)(D).

Courts assess "a fiduciary's performance by looking at process rather than results."  *Sweda*, 923 F.3d at 329.  And, in discharging its duties, "[a] fiduciary's process must bear the marks of loyalty, skill, and diligence expected of an expert in the field.  It is not enough to avoid misconduct, kickback schemes, and bad-faith dealings.  The law expects more than good intentions."  *Id.*  Accordingly, courts evaluating claims for breach of fiduciary duties under ERISA "must examine the context of a claim, including the underlying substantive law, in order to assess its plausibility."  *Renfro*, 671 F.3d 314, 321 (3d Cir. 2011) (citing *Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 320 n.18 (3d Cir. 2010)).  Thus, "[t]he complaint should not be 'parsed piece by piece to determine whether each allegation, in isolation, is plausible.'"  *Sweda*, 923 F.3d at 331 (quoting *Braden*, 588 F.3d at 594).  Of course, "because participants usually do not have direct evidence of how fiduciaries reached their decisions, the complaint need only provide an inference of mismanagement by 'circumstantial evidence,' rather than 'direct' allegations of matters observed firsthand."  *Singer v. Barnabas Health, Inc.*, Civ. No. 20-13119, 2021 U.S. Dist. LEXIS 72282, at *13 (D.N.J. Apr. 13, 2021) (quoting *Sweda*, 923 F.3d at 332).  Evaluated in this manner, "[p]leadings that establish only a mere possibility of misconduct do not show entitlement to relief."  *Sweda*, 923 F.3d at 326 (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)).

### 1. Duty of Prudence

Under ERISA, "fiduciaries are held to the 'prudent man' standard of care, which requires fiduciaries to exercise 'the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in

the conduct of an enterprise of a like character and with like aims.'" *Sweda,* 923 F.3d at 328 (quoting 29 U.S.C. § 1104(a)(1)(B)). As such, in addition to monitoring a plan's investment options, "[f]iduciaries must also understand and monitor plan expenses" because "'[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan' by decreasing its immediate value, and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees." *Id.* (quoting *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1826 (2015)).

While the specific combination of facts that may give rise to an inference of imprudence with respect to recordkeeping will vary from case to case, courts ruling on motions seeking dismissal of such claims have looked to factors such as whether a plan engages in competitive bidding for record keeping services; whether a plan uses one or more recordkeepers; whether a large plan leverages its size to obtain reduced fees; and whether the plaintiffs provide a "meaningful benchmark" from which to measure the fiduciaries alleged imprudence. *See, e.g., Pinnell v. Teva Pharms. USA, Inc.,* Civil Action No. 19-5738, 2020 U.S. Dist. LEXIS 55617, at *10–*12 (E.D. Pa. Mar. 31, 2020) (surveying cases).

Here, Plaintiffs allege that the Plan's average record keeping fees of $51–$57 per participant, per year, for the period in question reflects a lack of prudence in light of alleged industry-standard fees of approximately $35 per participant, per year, for recordkeeping services for much smaller plans. From this disparity, Plaintiffs infer that Defendants failed to act prudently by examining, benchmarking, and/or obtaining competitive bids to defray the reasonable costs of plan administration by leveraging the size of the Plan to the advantage of its participants and beneficiaries. According to Plaintiffs, Defendants should have been able to obtain record keeping fees of just $14–$21 per participant, per year. Plaintiffs further point to a steady rise in per-

participant administrative fees from 2014–2018; however, per-participant recordkeeping fees declined over the same time.

Accepted as true, Plaintiffs' allegations stop short of crossing the threshold from possible to probable. Plaintiffs contend that imprudence can be inferred from the comparison between the direct recordkeeping and administrative costs of smaller plans with the record keeping and administrative fees Plan participants pay. However, the Complaint notes that "The Plan pay[s] these [recordkeeping and administrative] expenses out of Plan assets, either directly from participant accounts or *indirectly through revenue sharing*." ECF No. 1 at ¶ 24 (emphasis added). But, as Defendants point out, Plaintiffs' $35 figure accounts for only direct recordkeeping fees; when revenue sharing (i.e. indirect fees) is included, smaller plans pay much more according to The 401k Averages Book. *See* ECF No. 16-10 at 6–7 and ECF No. 25-1 at 3–4. Furthermore, the asserted $14 to $21 average recordkeeping fee Defendants allegedly should have been able to obtain, which Plaintiffs state comes from *Moitoso*, 451 F.Supp.3d at 214, is premised on unspecified recordkeeping services provided by Fidelity to "other plans of over $1,000,000,000 in assets where Fidelity is the recordkeeper" without any comparison to the services provided to the Plan by Alight. *Id.* And, while a high fee may reflect imprudence even if the fee falls year-over-year, the fact that the Plan's recordkeeping fees trend downward for the period at issue points in the direction of prudence rather than imprudence. Thus, without additional detail about the Plan's fee structure and the services received in exchange for those fees, Plaintiffs' allegations raise the possibility that Defendants acted imprudently, but stop short of stating a plausible claim for breach of fiduciary duty. Accordingly, the portion of Count I that asserts a claim for breach of the duty of prudence will be dismissed.

### 2. Duty of Loyalty

The duty of loyalty under ERISA "requires a plan fiduciary to 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and...for the exclusive purpose of providing benefits to participants and their beneficiaries; and...defraying reasonable expenses of administering the plan.'" *Nicolas v. Trs. of Princeton Univ.*, No. Civ. 17-3695, 2017 U.S. Dist. LEXIS 151775, at *6 (D.N.J Sept. 18, 2017) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571 (1985)). That is, "Section 404 in essence codifies a common law fiduciary's general duty of loyalty...to administer the trust solely in the interest of the beneficiaries." *Danza v. Fid. Mgmt. Tr. Co.*, 533 Fed.Appx. 120, 123 (3d Cir. 2013).

Importantly, "[t]o state a loyalty-based claim under ERISA ... a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts." *Nicolas*, 2017 U.S. Dist. LEXIS 151775 at *7 (quoting *Sacerdote v. N.Y. Univ.*, 2017 U.S. Dist. LEXIS 137115, at *14 (S.D.N.Y. Aug. 25, 2017)). Accordingly, "courts look for allegations suggesting that the fiduciary made decisions benefitting itself or a third party," that is, a complaint must allege something more than just imprudence or mismanagement to state a viable claim for an ERISA fiduciary's breach of the duty of loyalty. *Singer*, 2021 U.S. Dist. LEXIS 72282 at *18 (citations omitted). And, in evaluating a breach of loyalty claim, "the Court must take into account the fiduciary's subjective motivation in making a decision for the plan." *Moitoso*, 451 F.Supp.3d at 204) (citing *Perez v. First Bankers Tr. Servs., Inc.*, 210 F.Supp.3d 518, 534 (S.D.N.Y. 2016) ("[T]he duty of loyalty is grounded in the motivation driving a fiduciary's conduct, and liability will not lie where a fiduciary's decisions were motivated by what is best for the [plan], even if those decisions also incidentally benefit the fiduciary."). Thus, for example, a plaintiff must do more than "identify a potential conflict of interest from the defendant's investment in its own

10

proprietary funds, as a plan sponsor may invest all plan assets with a single company…and may invest in funds it controls as long as it abides with the specific exemptions governing self-dealing." *Id.* (citations omitted).

Defendants assert that Plaintiffs have not alleged that "something more," and instead simply attempt to repackage their breach of prudence claim as a breach of loyalty claim.  ECF No. 16 at 14–15.  In support of their claim, Plaintiffs point only to the allegedly "grossly excessive" fees paid by the Plan and their allegation that "a PNC affiliate served as Plan trustee and that 'Defendants caused the Plan to compensate *PNC Financial Services*, at an average of over $235,000 per year from 2014 to 2018, purportedly for "certain administrative services" performed as the Plan Administrator.'"  ECF No. 24 at 17 (quoting ECF No. 1 at ¶¶ 22, 26).

These allegations, like Plaintiffs' allegations with respect to Defendants' alleged imprudence, stop short of asserting a plausible claim for breach of loyalty.  Viewed in full, these allegations cannot sustain a claim for disloyalty;  that is, the alleged imprudence coupled with allegations that PNC performed administrative services on behalf of the Plan in exchange for consideration stops short of permitting a reasonable inference of anything more than PNC receiving an incidental benefit, especially in light of the Plan's overall size.  Accordingly, Plaintiffs' breach of loyalty claims, which comprise the remainder of Count I, will also be dismissed, and Count I, which asserts claims based on alleged breaches of Defendants' fiduciary duties, will be dismissed in full.

### B. Plaintiffs' Claims for Failure to Monitor (Count II) and, in the Alternative, Participation in the Breach of Fiduciary Duty (Count III) Will Also be Dismissed

Finally, Defendant argues that Counts II and III cannot stand on their own without a viable, underlying claim for breach of fiduciary duty.  Plaintiffs do not meaningfully contest this

argument, noting instead that Count II should survive because the Complaint sufficiently pleads that PNC failed to "mitigate the losses caused by the *underlying breaches*" and Count III should survive because "it should be an obvious inference" from the allegations of the Complaint "that each Defendant knew or should have known of the *nonfeasance or malfeasance* of the others." *See* ECF No. 24 at 18–19 (emphasis added).  In other words, Plaintiffs tacitly concede that both Counts II and III rise or fall on the existence of a claim for an underlying breach of fiduciary duty. Thus, because the Court will dismiss Plaintiffs' claims in Count I, Plaintiffs' claims in Counts II and III will also be dismissed.  *See Brown v. Medtronic, Inc.,* 628 F.3d 451, 461 (8th Cir. 2010) (holding that "neither of these [derivative] claims can survive without a sufficiently pled theory of an underlying breach.") (citing *Ward v. Avaya, Inc.*, 487 F.Supp.2d 467, 481 (D.N.J. 2007) ("Plaintiff's complaint has failed to state a claim for breach of fiduciary duty . . . as to any of the Plans' fiduciaries. Consequently, Plaintiff's claims for failing to adequately monitor these fiduciaries must also fail.")).

**IV.    Conclusion**

For the foregoing reasons, PNC's Motion to Dismiss is hereby GRANTED and the Complaint is DISMISSED WITHOUT PREJUDICE.  Because the Court does not find that giving leave to amend would be inequitable or futile, *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008), and because Plaintiffs have requested the opportunity to amend in the event of dismissal, *see* ECF No. 24 at 20 n.8, Plaintiffs may file an amended complaint on or before **August 17, 2021**.  Plaintiffs are advised to make any such amended complaint their last, best effort, as the Court is not inclined to provide additional opportunities to amend.  Finally, should Plaintiffs choose not to file an amended complaint, the dismissal of their Complaint will be converted to a dismissal with prejudice.

DATED this 3rd day of August, 2021.

                                      BY THE COURT:

                                      /s/ Christy Criswell Wiegand
                                      CHRISTY CRISWELL WIEGAND
                                      United States District Judge

cc (via ECF email notification):

All Counsel of Record