IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRENA JOHNSON, BARBARA DEMPS, and JOHN MCCAULEY<br><br>Plaintiffs,<br>v.<br><br>THE PNC FINANCIAL SERVICES GROUP, INC., THE PNC FINANCIAL SERVICES GROUP, INC INCENTIVE SAVINGS PLAN ADMINISTRATIVE COMMITTEE, DOES NO. 1-10,<br><br>Defendants. | 2:20-CV-01493-CCW |

**MEMORANDUM OPINION**

Before the Court is a Motion to Dismiss filed by The PNC Financial Services Group, Inc., ("PNC") and The PNC Financial Services Group, Inc. Incentive Savings Plan Administrative Committee ("Administrative Committee") (collectively "Defendants"). *See* ECF Nos. 46 & 47. Defendants' Motion will be granted in part and denied in part, such that Plaintiffs' claim for breach of the duty of loyalty will be dismissed. Otherwise, Defendants' Motion will be denied.

**I.   Background**

   **A.   Procedural History**

Plaintiffs Henrena Johnson, Barbara Demps, and John McCauley collectively, ("Plaintiffs"), as a participants in the PNC Financial Services Group, Inc. Incentive Savings Plan (the "Plan"), initiated this case by filing a three-count Complaint against Defendants for (1) breach of fiduciary duty (Count I); (2) failure to monitor fiduciaries and co-fiduciary breaches (Count II); and, (3) in the alternative, liability for participation in breach of fiduciary duty (Count III). *See* ECF No. 1. Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See*

1

ECF No. 15. The Court dismissed the Complaint, finding that Plaintiffs stopped short of asserting a plausible claim for breach of fiduciary duty (Count I) because (1) their imprudence claim rested on an inapposite fee comparison and (2) their disloyalty claim failed to allege more than the mere possibility of a conflict of interest. *See* ECF No. 41 at 9–11. As Counts II and III could not stand without a viable, underlying claim for breach of fiduciary duty, they were also dismissed. *Id*. at 11–12. The Court granted Plaintiffs leave to amend the Complaint under Fed. R. Civ. P. 15(a). *Id*. at 2. Plaintiffs filed an Amended Complaint and assert the same three claims alleged in the original Complaint, with additional factual support for their imprudence claim. *See* ECF No. 42. Defendants again moved to dismiss. *See* ECF No. 46. Defendants' Motion is now fully briefed and ripe for disposition.

### B. Relevant Factual Allegations

Plaintiffs are current or former participants in the PNC Financial Services Group, Inc. Incentive Savings Plan ("Plan"). *See* ECF No. 42 ¶ 1. They allege that, for the period October 2, 2014 to the present, *see* ECF No. 42 ¶ 59, Defendants breached their fiduciary duties of prudence and loyalty under Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., by (1) allowing the Plan to be charged excessive recordkeeping and administrative expenses (prudence), and (2) by causing the Plan to pay PNC nearly $227,000 per year for certain administrative services performed as the Plan Administrator (loyalty). *See generally* ECF No. 42.

In support of their imprudence claim in Count I, Plaintiffs compare the Plan's recordkeeping and administrative fees to those fees paid by other, similar plans during the relevant period. *Id*. ¶¶ 42–46. Unlike the original complaint, which relied on an industry publication (401k Averages Book (20th edition)) to demonstrate that "smaller plans" paid $35 per participant, the Amended Complaint provides a table which compares the Plan's fees to four similarly sized 401(k)

plans with the same recordkeeping service provider, Alight Solutions LLC ("Alight"). *Compare* ECF No. 1 ¶ 25 n.1 *with* ECF No. 42 at ¶ 46. More specifically, this table includes the respective number of participants, assets, recordkeeping fees and recordkeeping fees per participant during 2018; this information shows that while the Plan's 2018 recordkeeping fee per participant was $50.99, the comparator plans' fees ranged from $25.30 to $33.20 during the same year. ECF No. 42 at ¶ 46. Accordingly, Plaintiffs contend that, because the Plan was paying the "same recordkeeper for virtually the same package of services[,]" Defendants should have been able to leverage the Plan's size to negotiate the recordkeeping fee down to a comparable rate—even lower than the $25 per head paid by the UPMC plan.[1] *Id.* ¶ 47. However, Plaintiffs allege that since the Plan continued to pay a rate nearly double that of "similarly sized"[2] plans, Defendants failed to follow a prudent process to ensure that the Plan paid reasonable fees, including the claims that (1) Defendants failed to examine, compare, or benchmark the fees paid by the Plan against those paid by similar plans and (2) Defendants "neglected to seek quotes from other recordkeepers and engage in processes to evaluate the reasonableness of the Plan's recordkeeping fees." *See id.* ¶¶ 49–50.

That said, Plaintiffs' disloyalty claim, also in Count I, appears to be predicated on essentially the same factual allegations on which the claim was premised in the original Complaint—that Defendants caused the Plan to pay PNC an average of approximately $227,000 per year for "certain administrative services." *Compare* ECF No. 1 ¶ 26 *with* ECF No. 42 ¶ 51. Similarly, Plaintiffs' allegations in the Amended Complaint as to Counts II and Count III are

---

[1] Plaintiffs' data within the chart was gathered from the respective 2018 Forms 5500, an annual report filed by individual 401(k) plans with the U.S. Department of Treasury and the U.S. Department of Labor. ECF No. 42 at ¶ 46 n.6; *id.* ¶ 30 n.3. While Plaintiffs chose to use 2018 information, they assert that the recordkeeping services obtained from Alight and its predecessor "have been the same or materially similar" throughout the relevant period (*i.e.*, since 2014) and thus, the Plan could have obtained "similar pricing every year since 2014." *See id.* ¶ 46 n.5.

[2] Plaintiffs contend that the plans used within the comparative chart are "similarly sized" to the Plan. ECF No. 42 at ¶ 49. In 2018, PNC's Plan had 66,032 participants and thus, was the largest plan based on number of participants. *Id.* ¶ 44. Additionally, the Plan had $5.676B in assets under management during 2018 and thus, was the second largest plan based on assets. *See id.* ¶ 46.

virtually unchanged from the original Complaint. *Compare* ECF No. 1 ¶¶ 56–67 *with* ECF No. 42 ¶¶ 77–88.

## II.     Standard of Review

### A.  Fed. R. Civ. P. 12(b)(1)

Because standing is a jurisdictional matter, a motion to dismiss challenging standing is properly reviewed under Rule 12(b)(1). *See Const. Party v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citing *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). Rule 12(b)(1) motions fall into one of two categories: "facial attacks" or "factual attacks." *See Const. Party*, 757 F.3d at 358. A facial attack "contests the sufficiency of the pleadings," while a factual attack "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *See id.* (cleaned up). When reviewing a facial attack, the court is "to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)[;]" conversely, when reviewing a factual attack, "the court may weigh and 'consider evidence outside the pleadings.'" *Id.* (internal citations omitted). Finally, "[u]nder Rule 12(b)(1), the plaintiff bears the burden of showing that the court has subject matter jurisdiction." *Anand v. Indep. Blue Cross,* No. 20-6246, 2021 U.S. Dist. LEXIS 138414, at *14 (E.D. Pa. July 23, 2021) (citation omitted); *see also*, *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

Here, Defendants contend that Plaintiffs lack standing because they never personally paid recordkeeping fees in excess of the "reasonable" $25 rate alleged in the Amended Complaint. ECF No. 47 at 9–10. The amount of recordkeeping fees personally paid by individual Plaintiffs is not alleged in the Amended Complaint; as such, the Defendants' Motion with respect to standing raises a factual attack, and the Court "may weigh and 'consider evidence outside the pleadings.'" *Const. Party*, 757 F.3d at 358 (internal citations omitted).

### B. Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The complaint does not need to contain detailed factual allegations to survive a motion to dismiss; however, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* and be "sufficient … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give risk to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

**III.    Discussion**

Defendants argue that (1) Plaintiffs cannot demonstrate Article III standing; (2) Plaintiffs fail to state a plausible claim for breach of fiduciary duties of prudence and loyalty; and (3) Plaintiffs' derivative failure-to-monitor and co-fiduciary participation claims fail as a matter of law.  ECF No. 47 at 9, 11, 20.  Because Defendants filed a Rule 12(b)(1) motion with a Rule 12(b)(6) motion, the Court will resolve the Rule 12(b)(1) motion first, determining whether it has jurisdiction before turning to address merits issues.  *See Anand v. Indep. Blue Cross*, No. 20-6246, 2021 U.S. Dist. LEXIS 138414, at *13–14 (E.D. Pa. July 23, 2021) (citation omitted).

**A.    Plaintiffs Have Alleged Sufficient Facts to Establish Article III Standing**

Defendants argue that because no named Plaintiff paid more than the $25 per participant, per year benchmark recordkeeping fee cited in the Amended Complaint, Plaintiffs cannot satisfy the injury in fact requirement and therefore lack Article III standing.  *See* ECF No. 47 at 10.

The "irreducible constitutional minimum" of standing requires plaintiffs to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).  To satisfy injury in fact, plaintiffs must clearly allege that they suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *See id.* at 339 (citation omitted).

The analysis is no different in the context of a putative class action because "named plaintiffs who represent a class must allege and show that they personally have been injured, not that [the] injury has been suffered by other, unidentified members of the class."  *Id.* at 338 n.6 (internal citation and quotation omitted).  Further, the "mere fact that ERISA plan participants purport to sue in a derivative capacity 'on behalf of the plan'… does not absolve the obligation to

6

"satisfy Article III's individualized-injury requirement.'" *Mator v. Wesco Distrib., Inc.*, No. 2:21-CV-00403-MJH, 2021 U.S. Dist. LEXIS 190577, at *9–10 (W.D. Pa. Oct. 4, 2021) (Horan, J.) (quoting *Patterson v. Stanley*, No. 16-cv-6568 (RJS), 2019 U.S. Dist. LEXIS 174832, at *15 (S.D.N.Y. Oct. 7, 2019)). As such, Plaintiffs must establish standing for each claim and each form of relief that is sought. *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citations and quotations omitted).

In addressing a similar standing argument, the court in *Mator* found the named plaintiffs had standing to pursue claims for plan mismanagement. *Mator*, 2021 U.S. Dist. LEXIS 190577, at *12. Like the present case, plaintiffs brought a claim for breach of duty of prudence due to unreasonable recordkeeping fees.[3] *Id.* The court recognized that "if a defined contribution plan's participants 'have alleged an injury to their own investments by virtue of the Fiduciaries' mismanagement,' . . . then ERISA 'grants the Participants a cause of action to sue on behalf of the Plan[].'" *Id.* (quoting *McGowan v. Barnabas Health, Inc.*, No. 20-13119 (KM) (ESK), 2021 U.S. Dist. LEXIS 72282, at *10 (D.N.J. Apr. 13, 2021)).

Like the plaintiffs in *Mator*, Plaintiffs here are participants in a defined-contribution plan that they allege has been imprudently managed by Defendants such that the Plan has been paying unreasonable recordkeeping fees. ECF No. 42 ¶¶ 4, 6. Plaintiffs argue that, in turn, when those unreasonably high fees are allocated to the Plaintiffs, as the actual, individual Plan participants, they are left to pay more than what they would pay had Defendants prudently managed the Plan, for even a modest change in the fees paid by a plan participant can have substantial long-term effects on an individual's retirement account. *See id.* ¶ 25. In other words, according to Plaintiffs,

---

[3] The plaintiffs in *Mator* alleged that during the class period, the plan paid annual recordkeeping fees of $159-194 per participant, while comparable plans paid annual recordkeeping fees of $41 per participant. *See Mator*, 2021 U.S. Dist. LEXIS 190577, at *13. While the named plaintiffs were found to have standing, the court dismissed the claim regarding excessive fees because the complaint's "apples-to-oranges" comparison measured the respective plan's direct and indirect fees against other plans that only reference direct fees. *See id.* at *17.

had Defendants managed the Plan prudently, Plaintiffs would have paid *less* in record keeping fees—and it is the difference between what Plaintiffs paid and what they would have paid had the Plan been prudently managed that constitutes the alleged injury.  *See* ECF No. 49 at 9–10.

Defendants' standing argument relies on the fact that "none of [the named] Plaintiffs ever paid more" than the benchmark reasonable recordkeeping fee alleged in the Amended Complaint (i.e., $25 per participant, per year).  ECF No. 47 at 10.  However, this illustrative $25 benchmark is used to compare plans to one another (i.e., the average per participant fee of one plan versus the average per participant fee of another plan), and thus the benchmark demonstrates the unreasonableness of the Plan's fees based on said comparison.  That the Plaintiffs paid less than the benchmark does not necessarily show that the fees Plaintiffs paid were in fact reasonable.  While it may be an appropriate benchmark to compare the Plan with other, similar plans, the benchmark is not a figure that can be used when determining individual participants' injuries.  *See Mator,* 2021 U.S. Dist. LEXIS 190577, at *12 (concluding injury-in-fact requirement met because "[i]n the event that Plaintiffs['] lawsuit is successful, a restoration of benefits back to the Plan would result in a financial benefit to all individual participants.").  Accordingly, the $25 benchmark is not indicative of an individual's lack of injury in fact.  The Court finds that Plaintiffs have alleged sufficient facts to establish Article III standing, and Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) will be denied.

    **B.**    **Plaintiffs State a Plausible Claim for Imprudence but Not Disloyalty**

Defendants argue that the Amended Complaint fails to state a plausible claim for breach of fiduciary duties in Count I.  *See* ECF No. 47 at 11–19.  Under ERISA, the elements of breach of fiduciary duty are as follows: "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan."  *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019) (citation

8

omitted). As in *Sweda*, Defendants only contest the second element (i.e., breach), which includes the duties of prudence and loyalty; as such, our analysis is limited to whether the Plaintiffs have sufficiently alleged that Defendants breached their ERISA-imposed fiduciary duties of prudence and loyalty. *Sweda*, 923 F.3d at 328; *see Peterson v. Ins. Servs. Office, Inc.*, Civil Action No. 20-13223 (SDW) (AME), 2021 U.S. Dist. LEXIS 70877, at *6 (D.N.J. Apr. 13, 2021) (citing 29 U.S.C. § 1104(a)(1)).

### a. Duty of Prudence

Fiduciaries are held to a "prudent man" standard of care, whereby they are to "exercise the 'care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Sweda*, 923 F.3d at 328 (citing 29 U.S.C. § 1104(a)(1)(B)). Considered "the highest known to the law[,]" this standard requires that fiduciaries not only prudently select and monitor investments, but also "understand and monitor plan expenses," because expenses like administrative fees can "'significantly reduce the value of an account in a defined-contribution plan.'" *Id.* at 333 (citation omitted); *id.* at 328 (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015)).

In assessing whether a fiduciary breached its duty of prudence, courts focus on the "process rather than [the] results." *Cho v. Prudential Ins. Co. of Am.*, Civil Action No. 19-19886 (JMV) (SCM), 2021 U.S. Dist. LEXIS 185397, at * 20 (D.N.J. Sept. 27, 2021) (citing *Sweda*, 923 F.3d at 329. However, "[p]laintiffs need not 'directly allege how [defendants] mismanaged the Plan,' so long as there is 'substantial circumstantial evidence' to permit the Court to 'reasonably infer that a breach has occurred.'" *Silva v. Evonik Corp.*, Civil Action No. 20-2202, 2020 U.S. Dist. LEXIS 250206, at *10 (D.N.J. Dec. 30, 2020) (quoting *Sweda*, 923 F.3d at 332).

In determining whether there is sufficient circumstantial evidence to infer that a breach has occurred, courts within this Circuit apply a totality of the circumstances approach by conducting a "careful and holistic evaluation" of the well-pleaded, non-conclusory allegations. *Sweda*, 923 F.3d at 329 (citations omitted).  In doing so, courts look to a number of factors, such as whether the plan engages in competitive bidding for recordkeeping services;  whether a plan leverages its size to obtain reduced fees;  and whether the plaintiffs provide "a sound basis for comparison [or] a meaningful benchmark" to gauge the alleged imprudence. *Pinnell v. Teva Pharms. USA, Inc.*, No. 19-5738, 2020 U.S. Dist. LEXIS 55617, at *10–12 (E.D. Pa. Mar. 31, 2020).

Defendants argue that, as to any claim of imprudence, the Amended Complaint "fails to allege any facts about the *process* PNC used for the Plan" and further, because it relies on a non-representative, cherry-picked 401(k) benchmark comparison, it does not permit any valid inference as to the deficiency of the process. *See* ECF No. 47 at 11, 13.[4]

However, *Sweda* emphasized that in performing a careful and holistic evaluation of the factual allegations, a "complaint should not be 'parsed piece by piece to determine whether each allegation, in isolation, is plausible.'" 923 F.3d at 331 (citation omitted).  Accordingly, because the *Sweda* plaintiffs offered "specific [return] comparisons" and "practices of similarly situated fiduciaries to show what plan administrators 'acting in a like capacity and familiar with such matters would [do,]" the court concluded that the "numerous and specific factual allegations" plausibly alleged a failure to meet the prudent man standard of care. *Sweda*, 923 F.3d at 332; *see*

---

[4] In support of the assertion that the Amended Complaint uses "cherry-picked plans," Defendants argue that the benchmark used by Plaintiffs "use[s] both direct and *indirect* fees to compensate Alight[,]" while the PNC Plan is strictly based on direct fees. ECF No. 47 at 7, 20. Defendants point to Proctor & Gamble's ("P&G") Form 5500 and argue that Plaintiffs ignored some of the indirect fees paid by P&G's plan. *See* ECF No. 47 at 15–16. Plaintiffs disagree, as the Form 5500 explains that the $1.6 million in recordkeeping fees includes "a flat fee [charged to each participant] . . . plus an additional amount calculated based on a percentage of the participant's total quarterly account balance." ECF No. 49 at 14 n.9. Regardless, the completeness of one of the benchmark examples used by Plaintiffs does not defeat the inferences made through the rest of the Complaint—because even if P&G's appropriateness is disputed, the Amended Complaint still provides three *other* comparative plans. ECF No. 42 at ¶ 44.

*also Nicolas v. Trs. of Princeton Univ.*, No. 17-3695, 2017 U.S. Dist. LEXIS 151775, at 10–11 (D.N.J. Sept. 18, 2017) (concluding that the following allegations purported specific breaching conduct: "[1] failing to conduct a competitive bidding process;  [2] failing to use significant bargaining power to negotiate lower fees;  [3] retaining two recordkeepers;  and [4] failing to remove two particularly unreasonable funds").

Applying this view to the Plaintiffs' assertions, the Amended Complaint sufficiently alleges that Defendants breached their duty of prudence.  Specifically, Plaintiffs allege that the Plan's average per participant, per year recordkeeping fee of $52.58 is "unreasonable and excessive relative to the services received[,]" especially when compared to the four other 401(k) plans noted within the Plaintiffs' benchmark table.  ECF No. 42 ¶¶ 44–46, 50.  Additionally, the Amended Complaint alleges that, based on the Plan's size and resulting negotiating power, Defendants should have been able to obtain the same services for a significantly lower amount; instead, Defendants "neglected to seek quotes from other recordkeepers and engage in processes to evaluate the reasonableness of the Plan's recordkeeping fees."  *Id.* ¶¶ 45, 50.  Accordingly, the benchmark comparison is sufficient to raise an inference that Defendants (1) "failed to scrutinize the prevailing rates for the recordkeeping services" received by the Plan;  and (2) "failed to follow a prudent process to ensure that the Plan was paying only reasonable fees."  *Id.* ¶¶ 48–49.

Courts recognize that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences."  *Comau LLC v. Blue Cross Blue Shield of Mich.*, No-19-cv-12623, 2020 U.S. Dist. LEXIS 222815, at *19 (E.D. Mich. Nov. 30, 2020) (quoting *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)).  While it may turn out that the terms of the recordkeeping arrangements were prudent under the circumstances, that is not the

relevant inquiry at this juncture. *See Allison v. Brands, Inc.*, No. 2:20-cv-6018, 2021 U.S. Dist. LEXIS 176063, at *27 (S.D. Ohio Sept. 16, 2021) (quoting *Marshall v. Northrop Grumman Corp.*, 2017 U.S. Dist. LEXIS 174204, at *11 (C.D. Cal. Jan. 30, 2017)).  Instead, when applying the holistic review of the Amended Complaint and comparing the allegations to those made in *Sweda* and *Nicholas*, it is reasonable to infer that the alleged fiduciary process was flawed or that the fiduciaries acted imprudently.  Drawing all reasonable inferences in the Plaintiffs' favor, the Court concludes that Plaintiffs have pled sufficient circumstantial evidence from which a breach can be inferred.  As such, the Court will deny Defendants' Motion to the extent it seeks dismissal of Plaintiffs' claim in Count I for breach of the duty of prudence.

        **b.**        **Duty of Loyalty**

ERISA also holds fiduciaries to a duty of loyalty, which "requires that fiduciaries act 'with an eye single toward beneficiaries' interests.'"  *Cho*, 2021 U.S. Dist. LEXIS 185397, at *34 (citation omitted); *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000). .  Accordingly, a fiduciary is expected to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." *Sweda*, 923 F.3d at 328 (citing 29 U.S.C. § 1104(a)(1), (a)(1)(A)).  Further, a fiduciary's process must bear the "marks of loyalty, skill and diligence expected of an expert in the field," as "it is not enough to simply avoid misconduct, kickback schemes, and bad-faith dealings." *Sweda*, 923 F.3d at 329.

As many allegations relating to loyalty of conduct, including "'compensation for services[,]' are 'inherently factual questions' for which neither ERISA nor the Department of Labor give specific guidance[,]" *Sweda*, 923 F.3d at 329 (quoting DOL Advisory Opinion 2013-03A), courts have found that the allegations must be more than a "recast [of] purported breaches

of prudence as disloyal acts." *Nicolas*, 2017 U.S. Dist. LEXIS 151775, at *7 (quoting *Sacerdote v. N.Y. Univ.*, No. 16-cv-6284 (KBF), 2017 U.S. Dist. LEXIS 137115, at *14 (S.D.N.Y. Aug. 25, 2017)). Accordingly, courts "take into account the fiduciary's subjective motivation in making a decision." *Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 204 (D. Mass. 2020) (citing *Perez v. First Bankers Tr. Servs.*, 210 F. Supp. 3d 518, 534 (S.D.N.Y. 2016)). Finally, as the plan's purpose is to provide benefits to as many intended beneficiaries as is economically possible while still protecting the fund's financial stability, courts must balance the duty of loyalty with the duty to keep a plan financially stable. *See Lynch v. J.P. Stevens & Co.*, 758 F. Supp. 976, 1008 (D.N.J. 1991) (citations omitted).

Defendants argue that Plaintiffs, in alleging disloyalty, have merely repackaged their imprudence theory and that PNC's receipt of an average of nearly $227,000 per year in administrative services do not sufficiently demonstrate disloyalty and therefore, the Plaintiffs, once again, fail to sufficiently allege a breach of the duty of loyalty. ECF No. 47 at 19–.

In assessing the sufficiency of a claim for breach of loyalty, the District Court for the District of New Jersey in *Cho* focused its analysis, in part, on whether the "allegations suggest[] that the fiduciary made decisions benefitting itself or a third party." *Cho*, 2021 U.S. Dist. LEXIS 185397 at *34 (citations omitted). Specifically, the plaintiff argued that defendant benefitted from the plan's use of funds by collecting fee revenue from the plan and instilling in Prudential employees "loyalty, product knowledge, and a built-in sales pitch." *Id.* at *35. Taken alongside the insufficient allegations for the breach of prudence, the court concluded that "no inference [could] reasonably [be] drawn" that the defendants retained those funds "out of improper motives." *Id.* at *35–36 (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 824 (8th Cir. 2018)).

Accepting the Amended Complaint's allegations as true, Plaintiffs fail to plead sufficient facts necessary to establish a breach of the duty of loyalty. Just like the Complaint, Plaintiffs argue in the Amended Complaint that the duty of loyalty claim is substantiated by (1) the Plan's payment of annual administrative fees for legal counsel, auditing, investment advisory services, and pension consulting services and (2) the Plan's compensation to PNC Financial Services for administrative services performed as the Plan Administrator. ECF No. 1 ¶ 26; ECF No. 42 ¶ 51; ECF No. 51 at 18–19. Taken together, these allegations simply contend that Defendants were employed to provide services to the Plan. *See* ECF No. 42 ¶ 51. However, "the duty of loyalty is grounded in the motivation driving a fiduciary's conduct, and liability will not lie where a fiduciary's decisions were motivated by what is best for the [Plan], even if those decisions also incidentally benefit the fiduciary." *Perez*, 2017 U.S. Dist. LEXIS 52117, at *204 (citations omitted); *Cho*, 2021 U.S. Dist. LEXIS 185397, at *36 ("[A] plan fiduciary does not breach its duty of loyalty simply by offering the plan sponsor's financial products; rather a plaintiff must allege plausible facts supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else." (emphasis original)). While the allegation that Defendants hired PNC for additional trustee services does, at most, identify a "potential for a conflict [of interest,]" it, again, leaves the court to infer that Defendants operated with disloyal motivation just because PNC was compensated for a service. *See Kopp v. Klein*, 894 F.3d 214, 222 (5th Cir. 2018); ECF. No. 42 ¶ 50, 51. As a "potential for conflict, without more, is not synonymous with a plausible claim of fiduciary disloyalty[,]" and the Court has already given leave to amend this claim once before, Plaintiffs' disloyalty claim will be dismissed with prejudice. *See Kopp*, 894 F.3d, at 222.

### C. Defendants' Motion to Dismiss the Failure to Monitor Co-Fiduciaries and, in the Alternative, Participation in the Breach of Fiduciary Duty Claims (Count II and III) Will Be Denied

Defendants also claim that Plaintiffs' Failure-to-Monitor (Count II) and Co-Fiduciary Participation Claims (Count III) should be dismissed because they are "entirely derivative" of Count I and, further, because they rest on legal conclusions. ECF No. 47 at 20. In short, Plaintiffs allege that because PNC is "responsible for appointing, overseeing, and removing members of the Administrative Committee[,]" it is expected to monitor the Administrative Committee's and its members' performance and take action to protect the Plan and participants when the members are not performing their respective duties. *See* ECF No. 42 ¶¶ 78–80. Plaintiffs claim that the allegedly unreasonable fees, on which they base their imprudence claim in Count I, also demonstrate that PNC failed to monitor the performance of the Administrative Committee (Count II) or, in the alternative, if any Defendant is not a fiduciary or co-fiduciary, that they knowingly participated in the breach of duty (Count III). *See id.* ¶¶ 77–88.

As previously explained, Plaintiffs' Amended Complaint states a claim for imprudence. Accordingly, the claims in Counts II and III do not fail merely because they are "derivative" of the underlying breach of fiduciary duty claim.

In addition, "courts have been willing to find a failure to monitor claim [when] the plaintiff has adequately alleged a breach of fiduciary duty claim." *McGowan*, 2021 U.S. Dist. LEXIS 72282, at *19–20 (collecting cases); *see also Falberg v. Goldman Sachs Group, Inc.*, 19 CIV. 9910 (ER), 2020 U.S. Dist. LEXIS 121457, at *37–38 (S.D.N.Y. July 9, 2020). Here, Plaintiffs allege that Defendants appointed the individual members of the Administrative Committee, that Defendants were responsible for the oversight and removal of said members, and that those members are exclusively responsible for monitoring the Plan administration and recordkeeping

15

fees. *See* ECF No. 42 ¶¶ 78–82. These facts are sufficient to state a claim in Count II. *See Allison*, 2021 U.S. Dist. LEXIS 176063, at *39–41; *In re Omnicom ERISA Litig.*, No. 20-CV-4141 (CM), 2021 U.S. Dist. LEXIS 144054, at *48–49 (S.D.N.Y. Aug. 2, 2021).

Defendants argue that Count II is also deficient because it lacks "factual allegations about PNC's monitoring process[.]" ECF No. 47 at 20. However, based on the Defendants' roles (i.e., an employer, a Savings Plan Administrative Committee, and its respective members), the facts here provide a sufficient basis to infer that Defendants knew or should have known about alleged mismanagement. ECF No. 42 ¶¶ 12–14; *see Allison*, 2021 U.S. Dist. LEXIS 176063, at *41 (finding that a sufficiently alleged breach of fiduciary duty claim generated a "natural inference" that defendants knew or should have known of alleged mismanagement).

With respect to Count III, which is pled in the alternative, Plaintiffs allege that Defendants committed a breach of trust through their knowing participation in the breach. ECF No. 42 at ¶ 87. A claim for breach of trust is "generally interchangeable with breach of fiduciary duty[,]" except that it can be asserted against non-fiduciaries. *In re Omnicom ERISA Litig.*, 2021 U.S. Dist. LEXIS 144054, at *50 (quoting *Reliant Transp., Inc. v. Div. 1181 Amalgamated Transit Union*, No. 18-cv-4561, 2019 U.S. Dist. LEXIS 198030, at *11 n.10 (E.D.N.Y. Nov. 14, 2019)); *see also Garthwait v. Eversource Energy Co.*, No. 3:20-CV-00902 (JCH), 2021 U.S. Dist. LEXIS 185228, at *31 (D. Conn. Sept. 28, 2021). "Courts have generally failed to see any distinction when evaluating breach-of-trust claims versus breach-of-fiduciary-duty claims other than the fiduciary-versus-non-fiduciary consideration." *In re Omnicom ERISA Litigation*, 2021 U.S. Dist. LEXIS 144054, at *50. Thus, the same analysis applies to a fiduciary duty and breach-of-trust claim. *Id.*

Accordingly, the Motion to Dismiss for Counts II and III will be denied.

**IV.     Conclusion**

For the foregoing reasons, PNC's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

DATED this 31st day of March, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):
All Counsel of Record